Daniel F. Fears, State Bar No. 110573
dff@paynefears.com
Andrew K. Haeffele, State Bar No. 258992
akh@paynefears.com
Leilani E. Jones, State Bar No. 298896
llj@paynefears.com
PAYNE & FEARS LLP
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Defendant CVS PHARMACY, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JULIE BRAZELTON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC., a Rhode Island Corporation; ANTHONY COLLIER, an individual; and DOES 1 - 100, inclusive;,<br><br>Defendants. | Case No. 2:20-cv-10604-DSF-AGR<br><br>**Hon. Dale S. Fischer**<br><br>**DECLARATION OF ANTHONY COLLIER**<br><br>Judge: Hon. Dale S. Fischer<br>Date: April 11, 2022<br>Time: 1:30 p.m.<br>Crtrm.: 7D<br><br>Trial Date: Julv 19. 2022 |

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

# DECLARATION OF ANTHONY COLLIER

I, Anthony Collier, declare and state as follows:

1. I am a current employee of CVS Pharmacy, Inc. ("CVS"). My job title is District Leader. I have been employed in this position, and with CVS, for 8 years.

2. I have personal knowledge of the facts set forth below. If called and sworn as a witness, I could and would competently testify hereto.

3. A District Leader oversees approximately 15-20 CVS stores (front store and pharmacy) in a specific geographic area. Currently, I oversee stores and pharmacies in the Island Empire. From April 2014 through August 2019, I oversaw stores and pharmacies in Los Angeles, including Store No. 9512 in Whitter, California.

4. As the District Leader for Store No. 9512, I supervised the pharmacy where Julie Brazelton was employed from April 2014 through August 2019. During that time, Ms. Brazelton was employed as a "Pharmacy Technician."

5. In my role as District Leader, I have access to current and former employee personnel records, including Ms. Brazelton's records. A true and correct copy of Ms. Brazelton's employee myHR profile is attached hereto as **Exhibit A**. This document has been maintained as a business record in the regular course of CVS's business.

6. Although I do not believe Ms. Brazelton and I ever met or spoke in person, I recall speaking to her via phone on at least one occasion in late 2018. I also

recall exchanging 1-2 text messages with Ms. Brazelton at the end of 2018, but I no longer have access to those messages because I did not save them.

7. Ms. Brazelton's personnel records indicated that she was a member of the UFCW Local 324 Union (the "Union") during her CVS employment. Attached hereto as **Exhibit B** is a true and correct copy of the collective bargaining agreement between the Union and CVS in effect during years 2017-2021.

## The Pharmacy Technician Position

8. Attached hereto as **Exhibit C** is a true and correct copy of the job description for the Pharmacy Technician position.

9. The Pharmacy Technician position requires a California Technician Certification or license. The main responsibilities are (1) assisting with the preparation and processing of prescriptions (under the supervision of a pharmacist) by preparing, counting, labeling, and packaging medication; (2) assisting with data entry and insurance billing and other record keeping; (3) inspecting and inventorying stock; and (4) assisting and ringing up customers, among other responsibilities.

10. The Pharmacy Technician position is physically demanding and requires constant movement. The physical requirements include:

- Remaining upright on feet for sustained periods of time;
- Moving about on foot to accomplish tasks, particularly for moving from one work area to another;

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

- Picking, pinching, typing or otherwise working primarily with fingers rather than whole hand or arm;
- Extending hand(s) and arm(s) in any direction;
- Bending body downward and forward by bending spine at the waist;
- Stooping to a considerable degree and requiring full use of the lower extremities and back muscles;
- Occasional lifting of up to 30 lbs. and exerting up to 30 lbs. of force; and
- Frequently exerting up to 10 lbs. of force.

11. Similarly, the essential functions of the Pharmacy Technician position are predominantly physical. They include: (1) standing at production stations; (2) manning the cash register; (3) moving between stations on demand; (4) providing assistance to customers at drop-off or pick-up; (5) picking up and moving product from station to station; and (6) accessing, storing, or inventorying product on shelves.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**CVS's WeCARE Workflow Process**

12. During the period of April 2014 – January 2019, Store 9512 was considered a "high volume" store. Store 9512 remains a high-volume store today; processing—on average—well over 500 prescriptions per day.

13. Throughout my time as a District Leader for CVS, the pharmacies I have managed were required to utilize CVS's WeCARE workflow operating process (the "WCW Process"). The purpose of the WCW process is to maximize efficiency and customer service by rotating pharmacy staff throughout a multi-workstation facility based on the hour-by-hour needs of the pharmacy.

14. Attached hereto as **Exhibit D** is a true and correct floorplan of the pharmacy at Store 9512. It is labeled with the five primary workstations that were in place from 2015 through the end of Ms. Brazelton's employment: drop off, pick-up, drive-thru, quality assurance, and production.

15. During the time Ms. Brazelton worked at Store 9512, the WCW Process was facilitated via the "workstation assignment board," which was used throughout the workday to notify pharmacy team members of their primary responsibility assignments, secondary responsibility assignments, and off-station tasks.

a. A "primary responsibility" is the team member's assigned primary workstation.

b. A "secondary responsibility" is the team member's back-up responsibility/secondary workstation.

c. "Off-station tasks" are tasks that pull pharmacy team members away from their workstations and must be completed by a pre-determined deadline but can be performed intermittently between on-station tasks.

16. By way of example, if Ms. Brazelton had the Primary assignment of production, her secondary role would be pick-up. Ms. Brazelton would be required to frequently walk throughout the pharmacy to select or return medications; ring up customers at pick-up; and then return to production. She would repeat that process based on demand.

17. During the time that Ms. Brazelton worked at Store 9512, it was essential that all pharmacy team members were capable of moving between stations to complete primary assignments, secondary responsibility assignments, and off-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

station tasks.

18. It was not possible for a pharmacy team member to remain at only one workstation for the duration of their shift, as this would require every other team member to take on additional responsibilities that were both contrary to and disruptive of the WCW Process.

**Julie Brazelton's 2018 Physical Restrictions**

19. On or about May 31, 2018, I spoke with Reasonable Accommodation Partner Christine Arsenault via telephone about a set of medical restrictions submitted to the RA Dept by Ms. Brazelton. The restrictions were as follows: sit 1 hour, stand 1 hour, repeat for 8-hour shift. Per Ms. Brazelton's doctor, these restrictions were characterized as "temporary" (the "May 2018 Restrictions").

20. These restrictions were problematic for a few reasons. First, the duration of seated time was not feasible with the WCW Process. For example, even if Ms. Brazelton were stationed at Drive-Thru, with the use of a stool, the duration of her sitting requirement would wholly prevent her from walking back/forth to pick up and drop off medication from drive-up patients. If Ms. Brazelton was assigned to Production, per her restrictions she could not leave Production for an hour—and would have to offload all other essential tasks (Pick-Up/customer service) to other pharmacy employees.

21. Second, and relatedly, Store 9512 was and is a high-volume pharmacy. Based on the patient flow, there was and is simply no way to guarantee that a pharmacy employee can sit for one hour, uninterrupted – let alone 10 or 15 minutes.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

22. Ultimately, the issue with Ms. Brazelton's restrictions – sitting for 1 hour at a time – was not her use of a stool. The issue was that the duration of seated time would prevent Ms. Brazelton from fulfilling essential functions of her job and completing just her Primary assignments under the WCW process. Even if there were a stool at every pharmacy station, or she brought her own stool from station to station, her responsibilities would still require standing and walking around the pharmacy multiple times within 1 hour.

23. In contrast, if an employee had restrictions with shorter duration—i.e., sit for 5-10 minutes every 2 hours, this could likely be accommodated. A colleague with such restrictions would still be able to move around the pharmacy to fulfill the responsibilities of their assigned stations, and also move between stations as prescribed by the WCW Process.

24. Accordingly, I concluded that it would not be possible to accommodate her restrictions of sitting for 1 hour/standing for 1 hour.

25. On or about December 3, 2018, I spoke with Reasonable Accommodation Partner Lynne DeGuilio via telephone about a new set of medical restrictions submitted to the RA Dept by Ms. Brazelton. The restrictions were as follows: limit walking/standing to 30 minutes. Per Ms. Brazelton's doctor, these restrictions were characterized as "temporary" (the "December 2018 Restrictions").

26. I concluded that an individual who was medically prohibited from walking or standing more than 30 minutes during a shift would not be physically capable of performing the essential functions of the Pharmacy Technician position or adhering to the required WCW Process to frequently move between stations. Technicians at Store 9512 had to (and have to) be constantly mobile and able to

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

move for the majority of their shifts.

27. During this call, I discussed a possible opportunity for Ms. Brazelton at a newly opened, lower volume store, if the duration of Ms. Brazelton's stand/walk restriction was reduced enough that she could adequately work within the WCW Process (with the added benefit of working at a store that handled considerably fewer prescription and customers than Store 9512). We agreed to revisit the option in early 2019, upon receipt of Ms. Brazelton's updated restrictions.

28. Ultimately, because December 2018 Restrictions were characterized as "temporary," I determined that it was appropriate to extend Ms. Brazelton's leave of absence, to provide additional time for her injuries and restrictions to improve.

29. Attached hereto as **Exhibit E** is a true and correct copy of the resignation letter submitted by Ms. Brazelton on or about January 17, 2019.

I declare under the penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed this 14th day of March, 2022 in Riverside, California.

Anthony Collier
Anthony Collier (Mar 14, 2022 17:22 PDT)

ANTHONY COLLIER

4877-8213-4291.3

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

# MSJ - Decl of Anthony Collier Brazelton

Final Audit Report 2022-03-15

| | |
|---|---|
| Created: | 2022-03-15 |
| By: | Leilani Livingston (llj@paynefears.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAZeiPnI40ZNzbBsVqJ0MzmdRNvWqOJaYH |

## "MSJ - Decl of Anthony Collier Brazelton" History

Document created by Leilani Livingston (llj@paynefears.com)
2022-03-15 - 0:20:07 AM GMT- IP address: 68.66.128.70

Document emailed to Anthony Collier (anthony.collier@cvshealth.com) for signature
2022-03-15 - 0:20:22 AM GMT

Email viewed by Anthony Collier (anthony.collier@cvshealth.com)
2022-03-15 - 0:21:08 AM GMT- IP address: 119.13.205.188

Document e-signed by Anthony Collier (anthony.collier@cvshealth.com)
Signature Date: 2022-03-15 - 0:22:43 AM GMT - Time Source: server- IP address: 12.15.136.27

Agreement completed.
2022-03-15 - 0:22:43 AM GMT