**BIGONGER AND BIGONGER**
Samantha S. Bigonger, SBN 286290
**LAW OFFICE OF DARIUS GLEASON APC**
Darius Gleason, SBN 284103
4897 Main Street
Yorba Linda, CA, 92886
T: (714) 777-4477 | F: (714) 777-1207
Email: samantha@bigongerlaw.com
Email: darius@loodg.com

Attorneys for Plaintiff JULIE BRAZELTON

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JULIE BRAZELTON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC., a Rhode Island corporation; ANTHONY COLLIER, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:20-cv-10604-DSF<br><br>Honorable Dale S. Fischer<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CVS PHARMACY, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Dale S. Fisher<br>Date: May 9, 2022<br>Time: 1:30 p.m.<br>Crtrm.: 7D<br><br>Trial Date: September 20, 2022 |

TO THE COURT, DEFENDANT CVS PHARMACY INC., AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT that Plaintiff submits the following Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment or in the Alternative Partial Summary Judgment.

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………3
II. STATEMENT OF FACTS…………………………………………………...5
III. STANDARD FOR SUMMARY JUDGMENT …………………………..9
IV. ARGUMENT…………………………………………………………10
A. CVS IS RESPONSIBLE FOR THE BREAKDOWN IN INTERACTIVE PROCESS……………………………………………..10
B. FORCED LEAVE OF ABSENCE IS NOT REASONABLE ACCOMODATION WHEN EMPLOYEE CAN RETURN TO WORK WITH ACCOMODATION AND/OR REASSIGNMENT IMPOSES NO UNDUE HARDSHIP………...……………………..…14
C. EVIDENCE OF CVS' DISCRIMINATORY AND/OR RETALIATORY MOTIVE……………………………………………..17
D. CVS' STATED REASONS ARE PRETEXT…………………….…..19
E. CVS FAILED TO REMEDY OBJECTIVELY INTOLERABLE WORKING CONDITIONS OF WHICH IT HAD NOTICE………...20
F. FAILURE TO PREVENT DISCRIMINATION AND RETALIATION DOES NOT FAIL AS A MATTER OF LAW….….22
G. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ………………………………………….…………22
H. CFRA INTERFERENCE……………………………………………..23
I. PLAINTIFF CAN RECOVER PUNITIVE DAMAGES…………….23
V. CONCLUSION…………………………………………………...…...25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)..........9

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992)..........9

*United States v. One Parcel of Real Property*,904 F.2d 487 (9th Cir. 1990)..........9

*Jensen v Wells Fargo Bank* (2000) 85 CA4th 245, 260)..........10

*Humphrey v. Memorial Hosps. Ass'n, supra,* 239 F3d at 1137..........10

*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954..........10

*Beck v. University of Wisconsin Bd. of Regents* (7th Cir. 1996)75 Fed 1131..........11

*Gelfo v. Lockheed Martin Corp.*, 140 Cal.App.4th 34..........11

*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424-425..........11

*Lui v. City and County of San Francisco,* 211 Cal.App.4th 962, 971..........15

*Atkins v. City of Los Angeles (2017)* 8 Cal.App.5th 696, 717-718..........15

*Stone v. City of Mount Vernon (2nd Cir. 1997)* 118 F3d 92, 95..........15

*Kilby v. CVS Pharmacy Inc.,* 63 Cal. 4th 1..........17

*County of Fresno v. FEHC (1991)* 226 Cal.App.3d 1541, 1555..........18

*Bostean v. LAUSD (1998)* 63 Cal.App.4th 95, 110..........18

*Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1389..........18

*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935,950-951)..........18

*Humphrey v. Memorial Hosps. Ass'n* (9th Cir. 2001) 239 F3d 1128, 1136..........18

*Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994)..........19

*Gallo v. Prudential Services*, 22 F.3d 1219, 1224 (2d Cir. 1994)..........19

*Sandell v. Taylor-Listug, Inc.* (2010) 188 CA4th 297, 310)..........20

*Turner v. Anheuser-Busch, Inc.,* 7 Cal. 4th 1239, 1244 (1994)..........22

*Watson v. Nationwide Ins. Co.*, 823 F.2d 360 (9th Cir. 1987)..........23

*Mullins v. Rockwell Int'l Corp.*, 15 Cal.4th 731, 737 (1997)..........23

*White v. Ultramar, Inc.,* 21 Cal.4th 563, 566-567 (1999)..........25

## I. INTRODUCTION

Plaintiff Julie Brazelton worked for Defendant CVS (CVS, Defendant or Defendant CVS) and its predecessors for thirty-eight (38) years. Plaintiff was an exemplary employee who was well-regarded by her coworkers and managers. After a busy summer season in 2013 where she worked twelve (12) hours days, seven (7) days per week, Plaintiff was diagnosed with plantar fasciitis in her feet. Plaintiff was off work intermittently throughout 2014 and 2015 and in March 2016 went on an extended medical leave of absence. Plaintiff was off work until May 2018 when she was approved to return to work with restriction.

Between May 2018 and January 2019, Plaintiff diligently engaged with CVS's Reasonable Accommodations Department (RA Department) to return to work. During this period, Plaintiff provided the RA Department with at least six (6) different Reasonable Accommodations Questionnaires (RAQ), a form required by CVS, that were signed by her treating physicians which outlined work restrictions/accommodations that would allow Plaintiff to return to work. Plaintiff made considerable effort to ask the RA Department what restrictions it would accept and then would obtain RAQs from her doctor that would include the restrictions suggested by the RA Department. However, Defendant CVS's RA Department consistently rejected Plaintiff's work restrictions, failed to clearly articulate the work restrictions it would accept, was repeatedly unresponsive to Plaintiff's inquiries, failed to follow the orders of Plaintiff's doctors, and stopped responding to Plaintiff after December 3, 2018.

On December 3, 2018, Plaintiff informed Defendant CVS that she would be unable to continue in an unpaid leave of absence indefinitely and needed to return to work to earn income or be forced retire. Plaintiff submitted two more RAQs and/or work status reports that outlined work restrictions on December 6, 2018 and January 11, 2019 but CVS's RA Department never responded. Plaintiff's leave of absence was extended instead of returning her to work and Plaintiff was forced to submit a

two-week resignation, per company policy, on January 17, 2019 with retirement effective February 1, 2019.

## II. STATEMENT OF FACTS

Plaintiff repeatedly and persistently engaged CVS's RA Department so that she could return to work between February 2018 and January 2019 (Additional Material Fact "AMF" 1). In February 2018 Plaintiff first informed Ms. Arsenault that she wanted to return to work and would likely require the assistance of a chair or stool (Purportedly Uncontroverted Fact "PUF" 17). On May 2, 2018, Plaintiff submitted the first RAQ signed by her treating physician, Dr. Domenic Signorelli (Dr. Signorelli), which outlined that Plaintiff was allowed to return work with the restrictions of: "sit and stand at will for pain for six weeks" (Purportedly Uncontroverted Fact "PUF" 22). In rejecting Plaintiff's first RAQ, CVS RA Department employee Ms. Christine Arsenault told Plaintiff on May 10, 2018 that the restriction outlined in the RAQ had not been accepted because it was "too vague" and failed to specify the amount of time for sitting and/or standing (PUF 23). Plaintiff texted CVS District Leader Mr. Anthony Collier on May 10, 2018 and asked for a clear statement of work restrictions that would be accepted, but Mr. Collier stated he did not know and directed Plaintiff to the RA Department (PUF 23).

After Plaintiff called her twice, on May 14, 2018, Ms. Arsenault returned Plaintiff's calls informing Plaintiff that the restrictions in the RAQ must have time frames for sitting and standing and she suggested to the Plaintiff that the restriction in the RAQ should state "something like sit/stand 1 hour" (PUF 23). Plaintiff promptly obtained an RAQ from Dr. Signorelli that outlined the work restriction suggested by Ms. Arsenault and submitted it to CVS' RA Department on May 15, 2018 (PUF 23). Plaintiff then called CVS's RA Department several times to follow up but, on May 31, 2018, Ms. Arsenault informed Plaintiff that after speaking to District Leader Mr. Anthony Collier that, "no stools could be accommodated in the

pharmacy area because of a lack of room." (PUF 23).

Plaintiff contacted CVS's RA Department on June 22, 2018 and asked for a clear statement of work restrictions to be included in the RAQ so she could be returned to work, but Ms. Arsenault did not call her back (PUF 24). Plaintiff then saw Dr. Signorelli on June 27, 2018 without any further input from CVS's RA Department as to a work restriction CVS would accept (PUF 24). Without the necessary guidance from CVS's RA Department, at Plaintiff's June 27, 2018 appointment with Dr. Signorelli, the RAQ was revised again now outlined the work restriction of "take breaks as needed, [e]rgonomic evaluation" with a duration of ten (10) weeks; this third RAQ was submitted to CVS's RA Department on July 11, 2018 (PUF 24). CVS's RA Department employee Ms. Tracy Sullivan followed up with Plaintiff on July 17, 2018 to "seek clarification" of the restriction outlined by Dr. Signorelli in Plaintiff's third RAQ. Plaintiff told Ms. Sullivan that Dr. Signorelli had already revised the original RAQ twice and that the RA Department should call Dr. Signorelli directly if they need further clarification (PUF 25). Plaintiff also informed Ms. Sullivan she would be fine returning to work with the accommodation of taking a fifteen (15) minute break every two (2) hours because missing mandatory rest breaks previously contributed to her pain (PUF 25).

On July 24, 2018, before speaking with Dr. Signorelli, RA Department employee Ms. Sullivan called Plaintiff and stated the third RAQ was not accepted because "it was not specific enough" (PUF 25). Ms. Sullivan also stated that Plaintiff would not be offered an ergonomic evaluation prior to returning to work. Plaintiff's treating physician Dr. Signorelli left the practice on or about July 25, 2018 requiring Plaintiff to find a new doctor (AMF 11).

Then on or about August 1, 2018, Ms. Arsenault reconnected with Plaintiff and stated that Dr. Signorelli's office said it was up to Plaintiff to take breaks as needed (PUF 25). Ms. Arsenault did not acknowledge Plaintiff's prior request to Ms. Sullivan on July 17, 2018 that she be allowed to take a fifteen (15) minute break

every two (2) hours (PUF 25, AMF 9). Plaintiff was still not offered a return to work. Plaintiff remained in contact with Ms. Arsenault though September and October 2018 to maintain her leave of absence and avoid termination (PUF 26).

On October 24, 2018, Plaintiff saw a new treating physician, Dr. Zenia Cortes, and obtained a fourth revised RAQ this time specifically outlining that Plaintiff be provided with a stool and that Plaintiff should not stand greater than thirty (30) minutes at a time (PUF 26). On November 4, 2018, Ms. Sullivan called Plaintiff to discuss the restrictions outlined in the fourth RAQ and Plaintiff told Ms. Sullivan that she could be productive in the pharmacy with a stool and/or taking breaks as needed (PUF 26). CVS's RA department did not respond to Plaintiff for several weeks thereafter. Plaintiff then called on November 21, 2018 to inform the RA Department that she had another appointment with Dr. Cortes that day and to confirm whether the restrictions outlined in the fourth RAQ dated October 24, 2018 had been accepted by the RA Department (PUF 27).

Ms. Sullivan did not call Plaintiff back until November 23, 2018, when she stated that Plaintiff's fourth RAQ dated October 24, 2018 was incomplete because Plaintiff's medical condition was not outlined (PUF 27). Plaintiff expressed her frustration to Ms. Sullivan that the RA Department waited over a month to inform her of its decision (PUF 27). By waiting until after Plaintiff had seen Dr. Cortes on November 21, 2018 to inform her the RAQ was incomplete, the RA Department ensured that Plaintiff did not have the benefit of any further input from the RA Department before seeking a revised fifth RAQ from Dr. Cortes that would not advance the interactive process.

On November 26, 2018, Ms. Sullivan stated that the restrictions in the fourth RAQ dated October 24, 2018 were still being considered (PUF 27). Plaintiff told Ms. Sullivan that prior to her leave of absence she worked in the pharmacy doing primarily typing at drop-off and would be able to do everything except production for a few weeks until her restrictions were lifted (PUF 27). On December 3, 2018,

CVS's RA Department employee Ms. Lynne DeGuilio informed Plaintiff that the the fourth RAQ was not going to work (PUF 27). Ms. DeGuilio also told Plaintiff that the restriction would have to be something like "stand an hour, sit an hour" (PUF 27). Plaintiff told Ms. DeGuilio that she already provided a RAQ outlining that specific restriction back on May 15, 2018 (PUF 27). Plaintiff also informed Ms. DeGuilio that she had been denied an orthotics evaluation requested by her doctor and that she would be without income after approximately January 2019 if she could not return to work (PUF 27).

No one from CVS's RA Department called Plaintiff after December 3, 2018 (PUF 27-29). On December 6, 2018, Plaintiff submitted a fifth revised RAQ that eliminated the thirty (30) minute restriction Ms. DeGuilio had rejected in the December 3, 2018 phone call with Plaintiff (PUF 28). No one from CVS's RA Department called Plaintiff back (PUF 27-28). On January 11, 2019, Plaintiff submitted a sixth revised work restriction to CVS's RA Department but no one from CVS's RA Department called Plaintiff back (PUF 28).

It was clear to Plaintiff at this point that after submitting at least six (6) different work restrictions in order to return to work over the course of eight (8) months, that after the phone calls and the run around she was given by CVS's RA Department, and after two (2) doctor's note with work restrictions were completely ignored by the RA Department that Defendant CVS had terminated the interactive process and was forcing her retirement by refusing to return her to work in any capacity.

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be properly granted only where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the opposing party. *Hanon v. Dataproducts*

*Corp*., 976 F.2d 497, 507 (9th Cir. 1992). Competent and specific evidence by a single declarant may create a triable issue as to a material fact although opposed by many other declarations to the contrary. *United States v. One Parcel of Real Property*, 904 F.2d 487, 491-492 (9th Cir. 1990).

Plaintiff is entitled to enjoy the benefit of favorable federal decisions under the ADA and is independent by state declaration of adverse ADA precedents because California's Fair Employment and Housing Act (FEHA) expressly states at Gov.C. § 12926.1(a) that:

> The law of this state in the area of disabilities provides protections independent from those in the federal Americans with Disabilities Act of 1990 (P.L. 101-336). Although the federal act provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections."

## IV. ARGUMENT

### A. CVS IS RESPONSIBLE FOR THE BREAKDOWN IN INTERACTIVE PROCESS

CVS argues in its Noticed Issue No. 11 that Plaintiff cannot establish that Defendant refused to participate in a good-faith interactive process to determine whether Plaintiff's alleged disability could be accommodated, that there is no evidence of a breakdown on the part of CVS's interactive process efforts and that Plaintiff ended the interactive process when she resigned.

The burden is on the employer seeking summary judgment to show no triable factual issues as to whether the mandatory process was engaged in in good faith. *Jensen v Wells Fargo Bank* (2000) 85 CA4th 245, 260. Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." *Humphrey v. Memorial Hosps. Ass'n, supra,* 239 F3d at 1137; *Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 971-972. Where the cause of the breakdown is missing information of the type that can only be provided

by one of the parties, the party withholding the information may be found to have obstructed the process. *Beck v. University of Wisconsin Bd. of Regents* (7th Cir. 1996)75 Fed 1131, 1137. Where evidence is conflicting and the issue of the parties' efforts and good faith is factual, the claim is properly left for the jury's consideration." *Gelfo v. Lockheed Martin Corp.*, 140 Cal.App.4th 34, 62, fn. 23. Employer liability for failure to engage in a good faith interactive process does not depend on a showing that any reasonable accommodation was possible. *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424-425.

Plaintiff's Statement of Genuine Disputes 17-30 and Additional Material Facts 1-24, provide substantial evidence disputing that CVS engaged in the interactive process in good faith. The evidence presented shows CVS's RA Department obstructed the process by: withholding information such as information about the work restrictions that would be acceptable to CVS; being repeatedly unresponsive before Plaintiff's doctor appointments; failing to consult with Plaintiff's doctors more than once when CVS had authorization to do so; and ended the interactive process on December 3, 2018 by ignoring Plaintiff. Several interactions between Plaintiff and the RA Department between May 2018 and January 2019 demonstrate this:

- On May 10, 2019, District Leader Mr. Collier told Plaintiff he did not know what work restrictions would be acceptable and directed Plaintiff to the RA Department (AMF 3). Ms. Arsenault based her decision to deny Plaintiff's requested accommodation on May 31, 2018 on her conversation with Mr. Collier who said the business is not able to accommodate sitting every other hour in the RX area (PUF 23).
- On May 14, 2018, Ms. Arsenault told Plaintiff "something like sit/stand 1 hour" would be acceptable (AMF 4-6). But on May 31, 2018, CVS's RA Department refused to approve a very similar work restrictions (AMF 6).
- Between June 22, 2018 and June 27, 2018, CVS's RA Department failed to

return Plaintiff's calls to provide a clear statement about work restrictions they would accept before Plaintiff's third doctor appointment (AMF 7).

- On July 17, 2018, CVS's RA Department refused to approve a third work restriction given to Plaintiff that did not require sitting which was in compliance with Mr. Collier's and Ms. Arsenault's statements on May 31, 2018 that the business is not able to accommodate sitting every other hour in the RX area (PUF 23).
- On July 24, 2018, CVS's RA Department employee Ms. Sullivan told Plaintiff the June 27, 2018 work restriction was "not specific enough" without first speaking to Plaintiff's doctor as she agreed to do on July 17, 2018 (AMF 9-10, PUF 25). Ms. Sullivan also stated no ergonomic evaluation would be conducted as ordered by Plaintiff's doctor on June 27, 2018 until after Plaintiff returned to work (AMF 10, PUF 25).
- On August 1, 2018, CVS's RA Department representative Ms. Arsenault learned from Plaintiff's doctor's office that Plaintiff's work restriction to take breaks as needed was up to Plaintiff but failed to acknowledge or implement Plaintiff's July 17, 2018 request to Ms. Sullivan to return to work with a fifteen (15) minute break every two (2) hours (AMF 9, 12).
- On November 23, 2018, CVS's RA Department had waited about thirty (30) days, and until after Plaintiff's doctor's appointment on November 21, 2018 where Plaintiff received a fifth RAQ, to make a decision on Plaintiff's fourth RAQ dated October 24, 2018 (AMF 16-17).
- On December 3, 2018, CVS's RA Department representative Ms. DeGuilio told Plaintiff that the thirty (30) minute restriction on continuous standing was not going to work but that a restriction like "stand an hour, sit an hour" could work (AMF 19). Ms. DeGuilio said this without acknowledging Plaintiff's prior July 17, 2018 request to work with a fifteen (15) minute break every two (2) hours or Plaintiffs prior May 15, 2018 doctor note with the exact same

work restriction Ms. DeGuilio suggested (AMF 5, 9, 19).

- On December 3, 2018, Plaintiff informed Ms. DeGuilio that CVS had failed to authorize the orthotics evaluation ordered by Plaintiff's doctor which the CVS previously approved (AMF 19).
- Plaintiff also told Ms. DeGuilio on December 3, 2018 that she needed to go back to work before February 2019 or would be without any income (AMF 19). Plaintiff submitted two (2) more doctor's notes with revised restrictions on December 6, 2018 and January 11, 2019. CVS's RA Department never called Plaintiff again after December 3, 2018 and extended Plaintiff's leave of absence to January 19, 2019 and then to March 2019 (AMF 19-22).
- The fifth RAQ dated November 21, 2018 and submitted to the CVS RA Department on December 6, 2018 eliminated the thirty (30) minute restriction on continuous standing suggested by Ms. DeGuilio on December 3, 2018 (AMF 20).
- Plaintiff stated in her resignation letter, "Although I have submitted a doctor's authorization numerous times allowing me to work with some restrictions, CVS Pharmacy has chosen not to return me to work. I'm at risk of losing my retirement medical, so I am forced to retire." (AMF 22).

The foregoing evidence establishes a genuine dispute over the allegedly good faith interactive process between Plaintiff and Defendant CVS. Defendant CVS repeatedly led Plaintiff on about acceptable work restrictions, moved the goal posts, ignored prior RAQs that met earlier stated requirements, ignored Plaintiff's opinion about accommodations needed, and ignored Plaintiff's doctors requests for an ergonomic evaluation and an orthotic evaluation. Defendant CVS ended the interactive process on December 3, 2018 when it failed to respond to two (2) RAQ/work restrictions communications by Plaintiff on December 6, 2018 and January 11, 2019.

For all the foregoing reasons, Plaintiff respectfully requests that this motion be

denied as to Plaintiff's eighth cause of action.

**B. FORCED LEAVE OF ABSENCE IS NOT REASONABLE ACCOMODATION WHEN EMPLOYEE CAN RETURN TO WORK WITH ACCOMODATION AND/OR REASSIGNMENT IMPOSES NO UNDUE HARDSHIP**

CVS argues in its Noticed Issue No. 12 that Plaintiff cannot establish her ninth cause of action because Plaintiff cannot establish that Defendant refused to accommodate a known disability and that Plaintiff could not perform the essential functions of her job as a Pharmacy Technician even after CVS granted her all the leave time she felt she needed to recover from her injury. CVS also argues that its WeCARE workflow operating process (hereinafter "WCW Process") precluded Plaintiff from returning to work with any of the work restrictions she submitted because Plaintiff was unable to be on her feet for sustained periods of time, and move about on foot to accomplish tasks, particularly moving from one work area to another.

The identification of essential job functions is a 'highly fact-specific inquiry.' *Lui v. City and County of San Francisco,* 211 Cal.App.4th 962, 971. Evidence of 'essential functions' may include the work experiences of past incumbents in the job, and the current work experience of incumbents in similar jobs. *Atkins v. City of Los Angeles (2017)* 8 Cal.App.5th 696, 717-718. Evidence that a claimed "essential function" was not performed or was only rarely performed by other employees, or that the function was usually delegated to others, may greatly aid in demonstrating that the function not "essential" *Stone v. City of Mount Vernon (2nd Cir. 1997)* 118 F3d 92, 95.

Plaintiff's Statement of Genuine Disputes, PUF 3-9, and Additional Material Facts 18, 24 provide evidence disputing Defendant's claim she was unable to perform the essential functions of her job as defined by CVS:

- Plaintiff provided at least two (2) RAQs which did not require sitting for any

specified period of time on June 27, 2018, and December 6, 2018 (AMF 8, 20). These restrictions did not prevent Plaintiff from remaining upright for sustained periods of time or otherwise meeting the physical requirements, essential functions, and WCW Process set forth by Defendant (PUF 3-8).

- Plaintiff testified there is a Pharmacy Technician in another CVS Whittier store close to her home who was accommodated with a stool while processing/producing prescriptions (PUF 4).
- Plaintiff testified that in CVS Store 9512, a Pharmacist named Sheila Rivera had a stool for eight years of Plaintiff's employment there (PUF 4).
- Ms. Rivera confirmed she used a stool at will as a Pharmacist at CVS Store 9512 for many years (PUF 4).
- Plaintiff's expert Mr. Monjaras stated that Plaintiff should have been given the opportunity to return to work with a stool like other pharmacy employees subject to the WCW Process (PUF 4).
- CVS's Vocational Expert states that a pregnant pharmacist was accommodated in the Pharmacy at CVS Store 9512 with a stool and the opportunity to sit and stand at will (PUF 4).

Alternatively, there is also substantial evidence that pharmacy employees including technicians at CVS Store 9512 did not work according to the WCW Process and instead worked at one or two stations for an entire shift. Therefore, Plaintiff disputes that moving between stations and standing/walking for sustained periods of time are in fact essential functions of the Pharmacy Technician position as alleged by Defendant:

- Prior to her leave of absence Plaintiff worked as a Pharmacy Technician doing primarily typing at drop-off (Brazelton Decl. ¶ 39).
- Plaintiff declares that the WCW Process was never fully implemented in CVS Store 9512 because it was impractical without enough trained pharmacy staff.
- Ms. Rivera also states during her employment at CVS Store 9512 the WCW

Process was not followed as written (PUF 5/Rivera Decl. ¶ 11).

- Ms. Rivera also states that some employees such as David Valenzuela would work at one station for a majority of the workday (PUF 4/Rivera Decl. ¶ 12).
- A former Pharmacy Technician at Store 9512, Diane Madrigal, confirms that she worked many shifts stationed at only pickup/drive-thru, and/or drop-off (PUF 4).

The California Supreme Court held in *Kilby v. CVS Pharmacy Inc.,* 63 Cal. 4th 1, that Employees do not have to prove that any particular seat was suitable for the work because an employer seeking to be excused from the seating requirement bore the burden of showing that compliance was infeasible. The evidence presented above shows Defendant frequently provided seats to pharmacy employees and Defendant cannot now argue providing a seat to Plaintiff was infeasible. Plaintiff disputes that she was unable to perform the essential functions of her job, particularly with the accommodation of a stool and/or legally required rest breaks, and disputes that standing/walking for sustained periods and the WCW Process are in fact essential functions of the Pharmacy Technician job.

Furthermore, an employer may not require that an employee take a leave of absence when an employee can work with a reasonable accommodation other than a leave of absence. 2 Cal. Code Regs. § 7293.9(c), *County of Fresno v. FEHC (1991)* 226 Cal.App.3d 1541, 1555*, Bostean v. LAUSD (1998)* 63 Cal.App.4th 95, 110. When an employee cannot perform the essential function of their job, an employer is relieved of the duty to reassign a disabled employee whose limitations cannot be reasonably accommodated in his or her current job only if reassignment would impose an 'undue hardship' on its operations or if there is no vacant position for which the employee is qualified." *Spitzer v. Good Guys, Inc*. (2000) 80 Cal.App.4th 1376, 1389. Employers are obligated to offer reassignment where they have a policy of offering such assistance or benefit to any other employees." *Prilliman v. United*

*Air Lines, Inc.* (1997) 53 Cal.App.4th 935,950-951.

Defendant's motion presents no evidence and does not argue that accommodating Plaintiff with reassignment would have imposed an undue hardship. Instead, Defendant contends that because Plaintiff's 2018 restrictions were characterized as "temporary", it was appropriate to extend Plaintiff's leave of absence instead of returning her to work in any capacity (PUF 62). Defendant provides no authority for its position that Plaintiff's temporary work restrictions entitled Defendant to extend her leave of absence instead of returning her to work when Plaintiff could have been reassigned without undue hardship. Plaintiff's Disability Compliance Expert has identified a large number of potential alternative job positions to which Plaintiff could have been reassigned by Defendant without undue hardship including numerous work-from-home positions. *Humphrey v. Memorial Hosps. Ass'n* (9th Cir. 2001) 239 F3d 1128, 1136.

The evidence presented establishes facts in dispute surrounding whether Plaintiff could perform the essential functions of the Pharmacy Technician job with accommodation, whether moving between stations and standing/walking for sustained periods of time are essential functions of that job, whether providing a stool was infeasible in any way, and whether Plaintiff's temporary restrictions made reassignment instead of extended leave an undue hardship on Defendant. For all the foregoing reasons Plaintiff respectfully requests that this motion be denied as to Plaintiff's ninth cause of action.

**C. EVIDENCE OF CVS' DISCRIMINATORY OR RETALIATORY MOTIVE**

CVS argues in its Noticed Issues 1-4 and 6-9, that Plaintiff's first, second, fifth, and sixth causes of action fail because she cannot establish the first and third required prima facie elements of her discrimination and retaliation claims, namely a causal link between her protected statuses and CVS decisions, and that CVS acted with a discriminatory or retaliatory motive because their stated legitimate reasons

are pretext.

The summary judgment standard is applied with added rigor in employment discrimination cases because credibility and intent are crucial issues. *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994). Intent is generally an issue for the jury. *Gallo v. Prudential Services*, 22 F.3d 1219, 1224 (2d Cir. 1994). The party opposing summary judgment in an employment discrimination case has a very slight burden to demonstrate that there are triable issues. *Sandell v. Taylor-Listug, Inc.* (2010) 188 CA4th 297, 310.

Plaintiff's Statement of Genuine Disputes 3-39 and Additional Material Facts provide strong direct and circumstantial evidence that Defendant CVS acted with a discriminatory and/or retaliatory motive that was a substantial motivating reason for CVS's refusal to return Plaintiff to work. The conduct of CVS's RA Department was repeatedly unreasonable and not in good faith. Furthermore, it is in dispute whether CVS's stated physical requirements, essential functions, and WCW Process are in fact essential to the Pharmacy Technician position. There is also no justification for failing to reassign Plaintiff. Instead, these facts clearly support a reasonable inference of a discriminatory and/or retaliatory motive against Plaintiff based on her disability, her age, her need for medical leave, and her need for workplace accommodation.

The role of Plaintiff's disability and need for medical leave and accommodation as protected categories upon which Plaintiff was discriminated and retaliated against is set forth throughout this Opposition. With respect to Plaintiff's age, after thirty-eight (38) years of continuous employment by Defendant and its predecessors, Plaintiff had reached the highest possible rate of pay. Both Plaintiff and Ms. Madrigal stated their belief that Defendant CVS's refusal to accommodate them with a return to work was in part based upon their higher rates of compensation and age (PUF 40). Under the FEHA, evidence that an employee was selected for termination because of a higher rate of compensation is evidence of age bias (Gov.

C. § 12941). Therefore, Plaintiff has met her burden of showing triable issues such that a jury could reasonably infer a causal link between Plaintiff's disability, age, need for medical leave and accommodation and her treatment by Defendant.

**D. CVS' STATED REASONS ARE PRETEXT**

Defendant states at Section B. 2. on page 19 of its motion that there are several legitimate, nondiscriminatory, nonretaliatory reasons for their conduct including accommodation policies, job description, Plaintiff's medical records, and her deposition among others. These reasons are given in support of Defendant argument on page 18 of its motion that:

> "CVS' decision (sic) extend Plaintiff's LOA, instead of prematurely returning her to work (while she was still unable to perform the physical functions of her position) was based 100% on the advice of her doctors."

As set forth above, Plaintiff has demonstrated that most or all of these stated reasons support a reasonable inference of pretext because there is no reasonable explanation for the conduct of CVS's RA Department in interacting with Plaintiff and CVS's description of the Pharmacy Technician job is in dispute given the other accommodations it made in CVS Store 9512. Furthermore on at least two occasions CVS's RA Department directly refused to comply with Plaintiff's doctor's advice further disputing that CVS's decisions were based 100% on the advice of her doctors: On June 27, 2018 Plaintiff's doctor ordered an ergonomic evaluation for Plaintiff (AMF 8), but on July 24, 2018, CVS's RA Department employee Ms. Sullivan told Plaintiff she would get no ergonomic evaluation until after returning to work (AMF 10). Then again on or about October 24, 2018, Plaintiff's doctor ordered an orthotic evaluation which was approved by CVS (AMF19), but as of December 3, 2018 Plaintiff's doctor was advised that an orthotic evaluation for Plaintiff was not approved and Plaintiff was never so evaluated (AMF 19).

Therefore, Defendant CVS has not successfully articulated a credible legitimate, non-discriminatory reason for extending Plaintiff's leave of absence instead of

returning her to work. In the event the Court finds the burden shifted to Plaintiff, Plaintiff has proven pretext by showing that Defendant did not follow the advice of Plaintiff's doctors one hundred percent (100%) of the time.

**E. CVS FAILED TO REMEDY OBJECTIVELY INTOLERABLE WORKING CONDITIONS OF WHICH IT HAD NOTICE**

CVS argues in is Noticed Issue No. 15 that Plaintiff's fourteenth cause of action fails as a matter of law because:

(1) Plaintiff maintains no claim for hostile work environment harassment and therefore CVS did not coerce or force Plaintiff's resignation in that the alleged conditions which prompted resignation were not sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job

(2) Plaintiff testified she was forced to retire to secure her medical benefits after Defendant refused to return her work.

The standard by which a constructive discharge is determined is an objective one - the question is 'whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit.' *Turner v. Anheuser-Busch, Inc.,* 7 Cal. 4th 1239, 1244. A 'continuous pattern of discriminatory treatment has been held sufficient to establish the claim. *Watson v. Nationwide Ins. Co.*, 823 F.2d 360 (9th Cir. 1987). The requisite knowledge or intent must exist on the part of either the employer or its officers, directors, managing agents, or supervisory employees." (*Turner*, supra, at p.1251.) The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact. Defendant's citation to *Mullins v. Rockwell Int'l Corp.*, 15 Cal.4th 731, 737 (1997) in support of its argument that Plaintiff cannot maintain a constructive discharge claim without simultaneously maintaining a harassment claim is inapplicable. In *Mullins*, the Plaintiff's leaves of absence

which led to his resignation were necessitated by the stress of the employer's harassment. That is not the case here because Plaintiff was never on a leave of absence arising out of stress from workplace harassment.

Plaintiff's Statement of Genuine Disputes and Additional Material Facts establish a credible dispute of fact about whether a reasonable employee in Plaintiff's position would have been prompted to resign under the same circumstances. Plaintiff experienced a continuous pattern of discriminatory and/or retaliatory treatment by Defendant's RA Department between May 2018 and January 2019. On December 3, 2018, Plaintiff explicitly told Defendant's RA Department employee Lynne DeGuilio that she could not continue to remain on leave of absence after January 2019 because she would be without income after that date (AMF 19).

There is no dispute of fact that CVS's RA Department never called Plaintiff back after December 3, 2018 even though Plaintiff turned in two (2) more RAQs/work restrictions. There is no evidence indicating that Defendant ever acknowledged or addressed the urgency of Plaintiff's predicament at any time. Instead, the evidence shows that Defendant CVS let time run out in lieu of fulfilling its legal obligation to return Plaintiff to work leaving Plaintiff no reasonable choice but to retire. For all the foregoing reasons, Plaintiff respectfully requests that this motion be denied as to Plaintiff's fourteenth cause of action.

**F. FAILURE TO PREVENT DISCRIMINATION AND RETALIATION DOES NOT FAIL AS A MATTER OF LAW**

CVS argues in its Noticed Issue No. 10, PUF 47 that Plaintiff cannot establish her seventh cause of action because Plaintiff cannot establish that she was subjected to discrimination and/or retaliation. However as set forth above, there are genuine disputes of fact concerning these issues and therefore Plaintiff's derivative claim does not fail.

**G. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

CVS argues in its Noticed Issue No. 13, 14, PUF 50, 51 that Plaintiff's thirteenth cause of action fails as a matter of law because Plaintiff cannot prove the existence of an employment contract between her and CVS. However as set forth above, and in PUF 13-14, Plaintiff presents evidence that a collective bargaining agreement existed between Defendant CVS and the UFCS Local Union of which Plaintiff was a member. Because there is an enforceable employment contract between Plaintiff and Defendant CVS, the motion should be denied.

**H. CFRA INTERFERENCE**

Noticed Issue No. 5, PUF 42. Plaintiff does not oppose the motion on this ground.

**I. PLAINTIFF CAN RECOVER PUNITIVE DAMAGES**

CVS argues in its Noticed Issue No. 16, 17, PUF 54-64 that Plaintiff cannot recover punitive damages because (1) she cannot offer evidence of oppression, fraud, or malice, on the part of any CVS employee, and (2) Anthony Collier (the alleged bad actor) was not an officer, director, or managing agent of CVS.

Punitive damages may be based on the same evidence which a plaintiff uses to establish discrimination, evidence of intentional discriminatory conduct supports a showing of malice or oppression for purposes of punitive damages under section 3294 of the California Civil Code. *Wysinger v. Automobile Club of Southern Cal.*, 157 Cal. App. 4th 413, 428-429 (2007). Punitive damages may be awarded based on misconduct by agents or employees if: (1) The employer authorized or ratified its agent's act; (2) the employer acted recklessly in employing the agent; or (3) the misconduct was committed by a "managerial employee" acting within the "scope of employment"…The scope of authority is a question of fact. *White v. Ultramar, Inc.,* 21 Cal.4th 563, 566-567 (1999).

Plaintiff has demonstrated that triable issues exist on her claims of failure to

engage in interactive process, failure to accommodate, disparate treatment discrimination and/or retaliation based on disability and/or age and or need for medical leave and/or workplace accommodation. Therefore, a reasonable jury could find that such conduct was malicious and/or made in conscious disregard of Plaintiff's rights, thereby supporting a claim of punitive damages. Defendant CVS ratified the conduct of its representatives District Leader Mr. Collier, and RA Department personnel Ms. Arsenault, Ms. Sullivan and Ms. DeGuilio in unlawfully denying Plaintiff reasonable accommodation and coercing her resignation. Each and all of those employees was also acting in a managerial capacity wherein they exercised discretionary authority over CVS corporate policy both by adherence or failing to adhere to written corporate policies and in making decisions about Ms. Brazelton that resulted in an ad hoc formulation of corporate policy. Therefore, Plaintiff respectfully requests the motion be denied as to punitive damages.

## V. CONCLUSION

Plaintiff respectfully requests that Defendant's motion be denied as to her first, second, fourth, sixth, seventh, eighth, ninth, thirteenth, and fourteenth causes of action.

Respectfully submitted,

DATED: April 15, 2022 **LAW OFFICE OF DARIUS GLEASON APC**

By: *Darius Gleason*

Darius Gleason,Attorney for Plaintiff,
JULIE BRAZELTON