**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JULIE BRAZELTON,<br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC., et al.,<br>Defendant. | CV 20-10604 DSF (AGRx)<br><br>Order GRANTING in Part and DENYING in Part Defendant's Motion for Summary Judgment (Dkt. 23) |

Defendant CVS Pharmacy, Inc. moves for summary judgment on Plaintiff Julie Brazelton's claims. Dkt. 23 (Mot.). Brazelton opposes. Dkt. 36 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. Defendant's motion is GRANTED in part and DENIED in part.

## I. UNDISPUTED FACTS

Brazelton worked as a Pharmacy Technician at CVS Store 9512 from June 2006 to February 2019. UF ¶ 1.[1] During her employment, Brazelton was a member of the United Food and Commercial Workers Union, Local 324 (the Union). Id. ¶ 2.

---

[1] Citations to UF refer to Plaintiff's Statement of Genuine Disputes and Additional Material Facts, dkt. 37, which incorporates CVS's proposed undisputed facts and Brazelton's responses to those facts. Citations to AMF refer to Brazelton's proposed additional material facts, which begin at page 44 of the UF. CVS did not submit a response to Brazelton's AMF. The Court has independently considered the admissibility of the evidence and has not considered facts that are irrelevant or based on inadmissible evidence.

CVS pharmacies typically have five primary workstations: drop-off, pick-up, drive-thru, quality assurance, and production. Id. ¶ 7. CVS uses a WeCare Workflow (WCW) Process, through which pharmacy staff are rotated throughout a multi-workstation facility based on the hour-by-hour needs of the pharmacy. Id. ¶¶ 5-6.

CVS offers accommodation options for injured and disabled employees, including light duty assignments, work environment adjustments, job duty modifications, and leaves of absence (LOAs), though Plaintiff disputes whether Defendant offered her such accommodations. Id. ¶ 9. Requests for accommodations or LOAs are handled through CVS's Reasonable Accommodation department (RA Department) and Leave of Absence department (LOA Department) at CVS's headquarters in Rhode Island. Id. ¶ 10. Accommodation requests are submitted, documented, and accommodated through a multi-step process. Id. ¶ 11.

Between March 2016 and February 2018, Brazelton requested numerous three-month continuous LOAs and extensions to those LOAs. Id. ¶¶ 12-16. In February 2018, Brazelton informed RA Partner Christine Arsenault that she wanted to return to work and would need to use a chair or stool. AMF ¶ 1. Brazelton requested a two-month extension of her LOA, and CVS approved her request through March 30, 2018. UF ¶ 17. Brazelton requested another extension to her LOA in March 2018, which CVS approved through May 3, 2018. Id. ¶ 18.

In May 2018, Brazelton was evaluated by her treating physician, and was placed on various restrictions, including "sit and stand at will for pain" for a duration of six weeks, including sitting for one hour and standing for one hour and repeating for an eight-hour shift. Id. ¶ 22; dkt. 27-7 at 1-5. Brazelton subsequently submitted a Reasonable Accommodation Questionnaire (RAQ) to CVS's RA Department with those restrictions. UF ¶ 22.

On May 10, 2018, Arsenault left a voicemail for Brazelton to let her know that she needed more specific information on how often Brazelton would need to sit. Id. ¶ 23. On May 14, Arsenault told

Brazelton she needed to know the frequency of sitting that would be required, and Brazelton was to clarify that information with her doctor at her upcoming physical therapy appointment. Id. ¶ 23. On May 30, Arsenault spoke with Collier, who said CVS was not able to accommodate Brazelton sitting every other hour in the RX area, and recommended Brazelton's LOA be extended until her next appointment on June 27. Id. On May 31, 2018, Collier spoke with Arsenault about the medical restrictions Brazelton submitted earlier that month. Id. ¶ 55.

On June 27, 2018, Brazelton was examined by her treating physician, who placed a restriction that she "take breaks as needed" through October 6 and to undergo an ergonomic evaluation by that date. Id. ¶ 24; Dkt. 27-8 at 1. Brazelton submitted an RAQ on July 11 with these restrictions. Id. Between July 17 and August 1, Brazelton spoke with RA Partners Tracy Sullivan and Christine Arsenault about returning to work. UF ¶ 25. On July 17, Brazelton stated that she wanted to take a fifteen-minute break every two hours, and that she did not want to sit for the entire eight-hour shift but that she would need to use a stool. Id. On July 24, Sullivan told Brazelton that the direction to "take breaks as needed" needed further clarification. Id. On July 31, Sullivan told Brazelton that her doctor said it was up to Brazelton to determine what she needed in order to take breaks, and they discussed that Brazelton's doctor was no longer with the practice and that Brazelton was unsure if she needed a different physician. Id.

On October 24, 2018, Brazelton was evaluated by her new treating physician, who wrote that Brazelton was "unable to stand or walk" for more than 30 minutes and that she "must sit/stand at will" for a period of four weeks, through November 21, 2018. Id. ¶ 26; dkt. 27-9 at 1. Brazelton submitted a RAQ, which stated that CVS should "allow patient to sit/stand at will, provide stool" until November 21, 2018. Dkt. 27-9 at 2. On November 26, Sullivan spoke with Brazelton, who said she believed she was unable to stand or walk for more than 30 minutes at a time and foresaw not being able to do production due to the constant twisting and turning of her feet that it would require. UF ¶ 27. On that call, Brazelton told Sullivan that prior to her LOA

she worked in the pharmacy primarily doing typing at drop-off and would be able to do everything except production during the period in which she was restricted from other activities. Id.; dkt. 27-9 at 10.

On December 1, 2018, Collier spoke with RA Partner Lynne DeGuilio by telephone about the medical restrictions submitted to the RA Department by Brazelton, which required her to limit walking and standing to 30 minutes. UF ¶ 59. Collier determined that CVS was not able to accommodate Brazelton's restrictions and ultimately determined that it was appropriate to extend Brazelton's LOA. Id. ¶¶ 60-64.

On December 3, 2018, Sullivan and RA Partner Lynne DeGuilio spoke with Collier, who said that there was a high volume of work, techs were constantly moving, and that CVS would not be able to accommodate the 30-minute limit for standing and walking, but that it would be more viable if it were increased to 60-90 minutes. Dkt. 27-9 at 10. Collier also stated that pharmacy techs need to be able to move for a large portion of their shift, and that Brazelton would need to clarify how much time she would need to be sitting. Id. Collier also stated that a new CVS store would be opening, and Brazelton may be able to work there when the restrictions were updated. Id.

Also on December 3, DeGuilio spoke with Brazelton and advised that her RAQ needed to clarify how much time she needed to be sitting, and told Brazelton that a 60-90 minute period for standing or walking would be more viable. Id. Brazelton stated that she and her doctor had tried to make an appointment for orthotics, which had previously been approved by CVS, but was advised while making that appointment that it was not approved, even though that was the "next step" in becoming "more mobile." Id. at 11. Brazelton also stated that her disability benefits would be running out in February 2019, so she would "need to start making alternative plans if she will not be able to come back to work." Id. On December 6, Brazelton submitted another RAQ eliminating the 30-minute sitting restriction. AMF 20; dkt. 39-5 (RAQ with December 6, 2018 timestamp).

On January 9, 2019, Brazelton was evaluated by her physician and was placed on the following restrictions: "unable to stand/walk for more than 30 mins." UF ¶ 28. On January 17, 2019, Brazelton submitted a notice of her resignation, which would be effective February 1, 2019. Id. ¶ 52; AMF ¶ 22.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(c)(1). A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 250-51. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ." Id. at 252. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" Fresno Motors v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (simplified).

## III. DISCUSSION

### A. Evidentiary Objections

"A district court's ruling on a motion for summary judgment may only be based on admissible evidence." Oracle, 627 F.3d at 385. A party seeking to admit evidence bears the burden of proof to show its admissibility. Id. "At the summary judgment stage, [the Court does] not focus on the admissibility of the evidence's form. [The Court] instead focus[es] on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

CVS submitted twenty-eight pages of evidentiary objections, most of which are repetitive. See dkt. 45 (Evidentiary Objections). The Court briefly considers CVS's objections.

CVS objects to paragraphs 7-9 of the Declaration of Sheila Rivera, dkt. 40 (Rivera Decl.), in which she stated that due to a medical condition in her back she had a doctor's note that requested an accommodation that allowed her to sit and stand as needed in the pharmacy and use a stool, which CVS accepted, and which did not affect her ability to carry out her job duties or participate in the WCW Process. Evidentiary Objections at 2. CVS objects to these statements on the grounds that they violate the best evidence rule by seeking to

prove the content of a writing without producing the original, and that her statements are contradicted by her reasonable accommodation records, which indicated she has no accommodation. Id. However, that Rivera's records did not indicate she was granted an accommodation to use a stool does not mean she did not use a stool, and Rivera may testify at trial as to her personal experience. See Fraser, 342 F.3d at 1036-37 ("At the summary judgment stage, [the Court does] not focus on the admissibility of the evidence's form. . . . [The Court] instead focus[es] on the admissibility of its contents.") (citing Hughes v. United States, 953 F.2d 531, 543 (9th Cir. 1992) (holding that an affidavit could be considered on summary judgment despite hearsay and best evidence rule objections because the facts underlying the affidavit were of the type that would be admissible evidence, even though the affidavit itself might not be admissible). The Court overrules CVS's objections to the Rivera Declaration.

CVS objects to paragraphs 4-5 of the Declaration of Diane Madrigal, dkt. 41 (Madrigal Decl.), on the same grounds as the Rivera Declaration described above. Evidentiary Objections at 3. The Court overrules those objections for the same reasons.

CVS also objects to the Declaration of Steve Monjaras because he was disclosed only as a rebuttal expert and his declaration contains only affirmative opinions about Brazelton's case in chief. Evidentiary Objections at 2-3. The Court does not rely on the Monjaras Declaration in making its decision, but notes that his declaration is inadmissible to the extent it does not rebut statements made by CVS's experts.

CVS objects to several paragraphs of the Declaration of Julie Brazelton. Dkt. 39 (Brazelton Decl.). CVS objects to paragraph 52 of the Brazelton Declaration, which states the WCW Process was not consistently implemented, on the grounds that it contradicts Brazelton's deposition testimony that pharmacy technicians had to use the WCW Process. Evidentiary Objections at 6. The Court finds these statements are not necessarily inconsistent and overrules this objection. CVS also objects to paragraph 8 of the Brazelton Declaration, which states Brazelton spoke to Arsenault in February

2018 and informed her she would need a stool or chair when returning to work. Id. at 10-11. CVS cites statements from Brazelton's deposition that she believes she spoke with several people but did not recall the details, id., but the Court is not convinced those statements are inconsistent with Brazelton's declaration, as CVS argues, and overrules the objection. CVS makes the same objection with respect to Brazelton's statement in paragraph 15 of her declaration, in which she states she spoke with Collier in July 2018, but the statements in Brazelton's deposition to which CVS cites do not contradict that statement in her declaration. CVS also objects to paragraph 45 of the Brazelton Declaration in that it misstates the date of the attached documents. Evidentiary Objections at 14, 28. The Court relies on the underlying documents, not Brazelton's characterization of them.

CVS objects to statements in the Brazelton and Madrigal Declarations regarding their beliefs that CVS refused to return them to work because they had reached the highest rate of pay. Evidentiary Objections at 14-15. For reasons explained in its discussion of Brazelton's claims below, the Court does not rely on these statements.

Finally, CVS objects to statements in the Brazelton, Rivera, and Madrigal Declarations regarding meal and rest breaks as irrelevant because Brazelton did not bring claims under the California Labor Code. Evidentiary Objections at 16. Generally, an objection to evidence on the ground that it is "irrelevant . . . [is] duplicative of the summary judgment standard itself" and thus "redundant" and unnecessary to consider here. Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."). CVS's objections are overruled. However, the statements about meal and rest break violations are clearly irrelevant to this action.

### B. Failure to Engage in the Interactive Process (Claim 8)

Under FEHA, an employer must "engage in a timely, good faith, interactive process with the employee or applicant to determine

effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). "To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred." Nealy v. City of Santa Monica, 234 Cal. App. 4th 359, 379 (2015) (citing Scotch v. Art Inst. of Cal., 173 Cal. App. 4th 986, 1018 (2009) and Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 974 (2008). "An employee cannot necessarily be expected to identify and request all possible accommodations during the interactive process itself because employees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have." Scotch, 173 Cal. App. 4th at 1018 (simplified). "The interactive process determines which accommodation is required." Wysinger v. Auto. Club of S. Cal., 157 Cal. App. 4th 413, 425 (2007). "[T]he fact that an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability under section 12940(n). If the employer is responsible for a later breakdown in the process, it may be held liable." Nadaf-Rahrov, 166 Cal. App. 4th at 985.

It is undisputed that the interactive process was over when Brazelton submitted her notice of resignation on January 17, 2019. At issue, however, is whether CVS failed to engage with the interactive process before that date.

CVS argues Brazelton cannot establish her claim for failure to engage in the interactive process because she, not CVS, was responsible for the breakdown in the interactive process. Mot. at 14. CVS points to the extensive communications between Brazelton and CVS employees regarding her accommodation requests and LOAs, which it characterizes as "frequent and consistent, and remained consistent through the date of her voluntary resignation." Id.

A reasonable jury could find that CVS failed to continue engaging in the interactive process when, on December 3, 2018, Brazelton told CVS that she had been unable to make an orthotics appointment because she was told it was not approved, even though she said it had previously been approved by CVS. Dkt. 27-9 at 10. Brazelton also told CVS that such an appointment would be the "next step" in becoming "more mobile" and that her disability benefits would be running out in February 2019, so she would "need to start making alternative plans if she will not be able to come back to work." Id. at 11. CVS has presented no evidence of any communications to Brazelton after December 3. Additionally, while Brazelton submitted another doctor's note to CVS on December 6 eliminating the 30-minute sitting requirement that CVS had said was unworkable, dkt. 39-5, CVS did not submit evidence of any response to that updated doctor's note. A reasonable jury could find this lack of communication with Brazelton was a breakdown in the interactive process.

Therefore, CVS has not met its burden and the Court DENIES its motion to dismiss as to Brazelton's claim for failure to engage in the interactive process.

## C. Failure to Accommodate (Claim 9)

The elements of a reasonable accommodation cause of action are (1) the employee had a disability, (2) the employee could perform the essential functions of the job with reasonable accommodation, and (3) the employer failed to reasonably accommodate the employee's disability." Nealy, 234 Cal. App. 4th at 373. "[E]limination of an essential function is not a reasonable accommodation." Id. at 375.

CVS argues Brazelton cannot establish her claim for failure to accommodate for several reasons.[2]

First, CVS argues Brazelton was not able to perform the essential functions of her job as a pharmacy technician and was not able to work within CVS's WCW Process. Mot. at 15 (citing UF ¶¶ 5-8, 27). The

[2] CVS does not dispute that Brazelton had a disability.

WCW Process involves employee rotation through workstations at drop-off, pick-up, drive-thru, quality assurance, and production based on the hour-by-hour needs of the pharmacy. UF ¶¶ 5-7. CVS argues Brazelton was not able to perform the essential tasks of "remaining upright on the feet for sustained periods of time" and "moving about on foot to accomplish tasks, moving from one work area to another, which would be required of her due to the nature of the WCW Process. UF ¶ 3. Brazelton does not dispute that she was unable to perform those functions.

However, Brazelton has raised triable issues as to whether the WCW Process was consistently implemented at her CVS location such that it would be required for her to perform all the functions of her job that CVS argues are essential. Brazelton states she primarily worked at drop-off doing typing before she began her extended leave. See Brazelton Decl. ¶ 51; dkt. 27-9 at 9. Additionally, Brazelton cites the Declaration of Diane Madrigal, a Lead Pharmacy Technician at the same CVS store where Brazelton worked, who declared that she worked primarily in the drive-thru or drop-off for an entire shift. Madrigal Decl. ¶ 7. This lends support to Brazelton's claim that the WCW Process was not strictly implemented at Brazelton's location. CVS has not submitted evidence to the contrary.

Brazelton has also raised a triable issue as to whether CVS was able to offer her a stool, one of her requested accommodations. Brazelton cites to the Declaration of Sheila Rivera, a CVS pharmacist and pharmacy manager who worked at the same location as Brazelton and who was permitted to use a stool while performing her job after she received a doctor's note requesting an accommodation that she be allowed to sit and stand as needed in the pharmacy. See Rivera Decl. ¶¶ 7-8; UF ¶¶ 3-4.

Second, CVS contends it is not liable because it extended Brazelton's LOA for thirty-four consecutive months, and Brazelton resigned before the end of the last approved extension. Mot. at 15. A reasonable jury could find the decisions to keep extending Brazelton's LOAs were unreasonable given that Brazelton may have been able to

use a stool or use some other accommodation other than an LOA, particularly because triable issues remain as to whether CVS failed to engage in the interactive process.

Third, CVS argues that it cannot be liable as a matter of law because there was no reasonable accommodation it could give Brazelton that would enable her to perform the job. Mot. at 15. CVS cites Davis v. California Guardian, Inc., an unpublished decision in which the court of appeal affirmed the trial court's grant of summary judgment because the essential functions of the job were undisputed, and it was also undisputed that the plaintiff could not perform those essential duties "regardless of what accommodations were given to him." 2020 WL 7350752 at *9 (Cal. Ct. App. Dec. 15, 2020). Here, unlike in Davis, the essential functions of Brazelton's job are not undisputed.

The Court DENIES CVS's motion for summary judgment as to the claim for failure to accommodate.

## D. Disability and Age Discrimination (Claims 1 and 2)

CVS moves to dismiss Brazelton's claims for disability and age discrimination on the grounds that these claims require Brazelton to prove discriminatory motive, and she cannot. Mot. at 16.

### 1. McDonnell Douglas Framework

FEHA prohibits discrimination by an employer because of certain characteristics, including age and race. Cal. Gov't. Code § 12940(a). In analyzing discrimination claims under FEHA, California courts apply the three-stage burden-shifting approach established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under the McDonnell Douglas test, the plaintiff first bears the burden of establishing a prima facie case, which raises a presumption of discrimination. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354-55 (2000). The burden then shifts to the employer to rebut this presumption by producing admissible evidence sufficient to show that "its action was taken for a legitimate, nondiscriminatory reason." Id. at 355-56.

If the employer meets its burden, the presumption established in the first step disappears, and the plaintiff must raise a triable issue suggesting that the employer's proffered reason is mere pretext for unlawful discrimination or offer other evidence of discriminatory motive. Id. at 356. To satisfy this burden and survive summary judgment, Plaintiffs "must raise a genuine factual issue as to whether the articulated reason was a mere pretext for discrimination." Phillips v. PacifiCorp, 304 F. App'x 527, 530 (9th Cir. 2008).

When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1242 (9th Cir. 2013) (alteration in original) (quoting Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011)). "Thus, to prevail on summary judgment, the employer is required to show either that (1) plaintiff could not establish one of the elements of the FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." Id. (brackets omitted). "If the employer meets its burden, the discharged employee must demonstrate either 'that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." Id. (alteration in original).

To establish a prima facie case of discrimination under FEHA, plaintiffs must establish (1) they are members of a protected class; (2) they were performing competently in the position they held; (3) they suffered an adverse employment action, such as termination; and (4) "some other circumstance suggests discriminatory motive." Guz, 24 Cal. 4th at 355.

To establish a prima facie case, "the plaintiff must produce evidence sufficient to show that an illegitimate criterion was a *substantial factor* in the particular employment decision." Harris v. City of Santa Monica, 56 Cal. 4th 203, 232 (2013). The requisite degree of causation is higher than a "motivating factor" and lower than the "but for cause." Id. Plaintiffs can meet this prong of the prima facie

analysis by demonstrating "similarly situated individuals outside [their] protected class were treated more favorably, *or* other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010) (emphasis added) (brackets in original).

"While the plaintiff's prima facie burden is 'not onerous,' [s]he must at least show 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were' based on a [prohibited] discriminatory criterion . . ." Guz, 24 Cal. 4th at 355 (alterations in original) (citation omitted); see also Reynaga v. Rosenburg Forest Prods., 847 F.3d 678, 691 (9th Cir. 2017) ("We require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by the fact finder, upon a full record.") (simplified)).

### 2. Disability Discrimination

CVS argues Brazelton cannot establish a discriminatory motive with respect to either her disability or age discrimination claims because its decision to continue Brazelton's LOAs rather than return her to work was based on the advice of her doctors. Mot. at 18. Brazelton argues in opposition that she has raised "strong direct and circumstantial evidence that Defendant CVS acted with a discriminatory and/or retaliatory motive" because CVS's conduct was "repeatedly unreasonable and not in good faith," it is in dispute whether Brazelton could perform the essential functions of the pharmacy technician position, and CVS had "no justification for failing to reassign Plaintiff." Opp'n at 17.

"Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (simplified) (quoting Davis v. Chevron, U.S.A., Inc., 14 F.3d 1082, 1085 (5th Cir. 1994)). Nothing Brazelton cites is direct evidence. Brazelton has also

not cited any circumstantial evidence that leads to an inference of a discriminatory motive. Even if CVS acted unreasonably and not in good faith, and even if Brazelton could perform the essential functions of the job, this evidence would not permit the inference that CVS's actions were more likely than not based on a discriminatory motive. See Guz, 24 Cal. 4th at 355.

### 3. Age Discrimination

Brazelton also argues she can establish age discrimination because she and another CVS pharmacy technician were not accommodated with a return to work due to their age, which is evidence of discrimination under California law. Opp'n at 17-18. In support, Brazelton cites Cal. Gov't Code § 12941, which states that "the use of salary as the basis for differentiating between employees when terminating employment may be found to constitute age discrimination if use of that criterion adversely impacts older workers as a group . . . ." This provision is unhelpful here, where Brazelton has not identified any evidence permitting an inference that CVS's decision not to accommodate her by allowing her to return to work was based on her age, rather than other nondiscriminatory reasons. Brazelton merely cites her declaration and the Madrigal Declaration, see AMF ¶ 40, which state their belief that CVS refused to accommodate them with a return to work because they had reached higher rates of pay due to their age and number of years working for CVS. However, their subjective and unsubstantiated beliefs about CVS's motivations do not create an issue of fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (refusing to find a triable issue where the only evidence presented is 'uncorroborated and self-serving' testimony."); see also Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015) ("the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature. However, a self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence.").

Because Brazelton has not established a prima facie case, the Court GRANTS CVS's motion to dismiss as to Brazelton's disability and age discrimination claims.

**E. Retaliation (Claims 5 and 6)**

CVS moves for summary judgment on Brazelton's claims for retaliation under FEHA and CFRA. Mot. at 17-18.

**1. FEHA**

Like claims for discrimination, claims for retaliation under FEHA are analyzed under the McDonnell Douglas burden-shifting framework. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). To establish a prima facie claim for retaliation, Brazelton must show that (1) she was engaged in a protected activity, (2) CVS subjected her to an adverse employment action, and (3) there is a causal link between the protected activity and CVS's action. Id. at 1042. A plaintiff may establish a causal link between the alleged protected activity and the alleged adverse action by circumstantial evidence, including the employer's knowledge of the protected activity and the proximity in time between the protected action and the adverse employment action. See Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011); see also Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 507 (9th Cir. 2000) ("[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred.").

CVS moves for summary judgment on Brazelton's FEHA retaliation claim on the grounds that Brazelton cannot demonstrate CVS had a retaliatory motive, and therefore cannot establish the third prong of her prima facie case. Mot. at 17. Brazelton has not put forward any evidence in response that demonstrates any retaliatory motive on the part of CVS.

The Court GRANTS CVS's motion as to the FEHA retaliation claim.

### 2. CFRA

The elements of a retaliation claim under CFRA are "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA leave." Faust v. Cal. Portland Cement Co., 150 Cal. App. 4th 864, 885 (2007).

CVS argues Brazelton cannot establish the causation prong of her CFRA retaliation claim because she cannot establish any retaliatory motive. Mot. at 17-18. For the reasons explained above with respect to the discriminatory motive prong of Brazelton's discrimination claims, the Court agrees that CVS has met its burden of establishing that Brazelton cannot establish any retaliatory motive behind CVS's decisions to extend her LOA rather than return her to work other than the reasons set forth by CVS, and Brazelton has not raised triable issues.

The Court GRANTS CVS's motion as to the CFRA retaliation claim.

## F. Failure to Prevent Discrimination and Retaliation (Claim 7)

CVS moves to dismiss Brazelton's claim for failure to prevent discrimination and retaliation on the grounds that it is derivative of her discrimination and retaliation claims. Mot. at 25-26. The Court agrees. See Adetuyi v. City & Cnty. of San Francisco, 63 F. Supp. 3d 1073, 1093 (N.D. Cal. 2014) ("[N]o liability can arise from not preventing discrimination or retaliation that did not occur." (citing Trujillo v. N. Cnty. Transit Dist., 63 Cal.App.4th 280, 289 (1998)). The Court GRANTS CVS's motion as to the claim for failure to prevent discrimination and retaliation.

### G. Constructive Discharge (Claim 14)

CVS argues Brazelton's claims for constructive discharge fails as a matter of law. Mot. at 22-23.

CVS argues that because Brazelton dismissed her third claim for hostile work environment, she necessarily cannot succeed on her constructive discharge claim. Mot. at 23. CVS cites Holmes v. Petrovich Dev. Co., LLC, 191 Cal. App. 4th 1047, 1062 (2011), in which the court found the plaintiff's constructive discharge claim necessarily failed because the plaintiff had also "failed to present sufficient evidence of a hostile work environment." In Holmes, the plaintiff's constructive discharge and hostile work environment claims were based on the same facts: the plaintiff's employer's comments about her pregnancy. Here, however, Brazelton's constructive discharge claim does not appear to be based on the same facts as her dismissed harassment claim; they are based on CVS's repeated placement of Brazelton on LOAs rather than returning her to work, which Brazelton argues left her "no reasonable choice but to retire." See Opp'n at 20.

CVS also argues Brazelton's constructive discharge claims fail because her decision to retire "was not a product of illegal or inappropriate treatment by CVS" and was instead "her own strategic decision to leave the company at a time when she could maximize her retirement medical benefits." Mot. at 23-24. However, as described above with respect to Brazelton's claim for failure to engage in the interactive process, there is a triable issue as to whether CVS's failure to communicate with Brazelton after she notified them that her disability benefits would be running out in February 2019 if she did not return back to work was the reason for her decision to retire.

The Court DENIES CVS's motion to dismiss Brazelton's claim for constructive discharge.

### H. CFRA Interference (Claim 4)

CVS moves to dismiss Brazelton's claim for CFRA interference. Mot. at 24. Brazelton does not oppose CVS's motion as to this claim.

Opp'n at 21. Therefore, the Court GRANTS CVS's motion as to the CFRA interference claim.

### I. Breach of Implied Covenant of Good Faith and Fair Dealing (Claim 13)

CVS argues Brazelton cannot prevail on her claim for breach of the implied covenant of good faith and fair dealing because she was an at-will employee and therefore had no contractual right to continued employment. Mot. at 25 (citing Horn v. Cushman & Wakefield W., Inc., 72 Cal. App. 4th 798, 820 (1999) ("Because we have found that summary judgment was properly granted on the ground that Horn's employment was at will, he can state no claim either for breach of an employment contract or for breach of the implied covenant.").

"The covenant of good faith and fair dealing does not transform a terminable-at-will employment contract into a terminable-only-for-good-cause contract." Gould v. Maryland Sound Indus., Inc., 31 Cal. App. 4th 1137, 1152 (1995), as modified (Feb. 9, 1995).

CVS submitted in support of its motion the CVS Health Colleague Handbook, in which Brazelton acknowledged her at-will employment status. UF ¶¶ 50-51 (citing dkt. 26-1). Brazelton does not dispute that the handbook set out her at-will employment status, and CVS has met its burden of demonstrating Brazelton is an at-will employee. However, Brazelton argues she "presents evidence that a collective bargaining agreement existed between Defendant CVS and the UFCS Local Union of which Plaintiff was a member" and therefore there is an enforceable employment contract between CVS and Brazelton. Opp'n at 21; see also UF ¶¶ 50-51. Brazelton argues the collective bargaining agreement modified her at-will status. Id.; see also dkt. 38-2 (Collective Bargaining Agreement)). This argument raises a preemption issue not briefed by the parties. See Beals v. Kiewit Pac. Co., 114 F.3d 892, 894 (9th Cir. 1997) ("Section 301 of the Labor Management Relations Act (LMRA) preempts state law claims that are based directly on rights created by a collective bargaining agreement as well as claims that are substantially dependent on an

interpretation of a collective bargaining agreement."). Regardless, Brazelton has failed to raise a triable issue because she has not identified how the collective bargaining agreement was violated. The Court therefore GRANTS CVS's motion as to this claim.

**J. Punitive Damages**

CVS argues Brazelton cannot recover punitive damages because she cannot demonstrate oppression, fraud, or malice on the part of any CVS employee, and because Collier was not an officer, director, or managing agent of CVS. Mot. at 26.

Punitive damages are available under the California Civil Code "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a); Commodore Home Sys., Inc. v. Superior Court, 32 Cal. 3d 211, 215 (1982). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Id. (c)(2). "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Id. (c)(3).

As is the case here, where the defendant is a corporate employer, the "authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." Cal. Civ. Code § 3294(b). In passing this section as written, "[t]he drafters' goals were to avoid imposing punitive damages on employers who were merely negligent or reckless and to distinguish ordinary respondeat superior liability from corporate liability for punitive damages." White v. Ultramar, Inc., 21 Cal. 4th 563, 572 (1999).

"Corporate ratification in the punitive damages context requires actual knowledge of the conduct and its outrageous nature." College Hosp. Inc. v. Superior Court, 8 Cal. 4th 704, 726 (1994) (en banc). Ratification may be established by any circumstantial or direct evidence demonstrating adoption or approval of the employee's actions by the corporate agent and may be inferred from a failure by the employer to investigate an employee's acts once the employer has become aware of them. Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 622 (1989). California courts have held that supervisors who have no discretionary authority over decisions that ultimately determine company policy are not considered managing agents even though they may be able to hire or fire other employees. White, 21 Cal. 4th at 577 ("[A supervisor's] supervision of plaintiff and her ability to fire him alone were insufficient to make her a managing agent.").

Here, Brazelton has not set forth any evidence that, even in the light construed most favorably to Brazelton, demonstrates oppression, fraud, or malice within the meaning of Section 3294. The Court GRANTS CVS's motion for summary judgment as to Brazelton's prayer for punitive damages.

## IV. CONCLUSION

Defendant's motion is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Date: June 28, 2022

Dale S. Fischer
United States District Judge